# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| GENA L. M., | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )     No. 2:20-cv-00205-GZS |
| | ) |
| ANDREW M. SAUL, | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
|       *Defendant* | ) |

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable, as of her date last insured for SSD benefits, December 31, 2000, of performing past relevant work as a sales manager, sales agent, and laundry dry cleaner, or, in the alternative, work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in (i) finding neither a medically determinable nor a severe impairment of post-traumatic stress disorder (PTSD) and (ii) evaluating the opinion of treating social worker Andrew C. Curtin, LCSW. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 10) at 2-8. I agree that the ALJ erred in evaluating the plaintiff's PTSD and that the error was not harmless. Accordingly, I recommend that the court vacate the commissioner's

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's second point of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2000, Finding 1, Record at 14; that, through her date last insured (DLI), she had the severe impairments of asthma and low back pain, Finding 3, *id.*; that, through her DLI, she had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), in that she could lift and carry up to 25 pounds frequently and 50 pounds occasionally, stand and/or walk for eight hours and sit for eight hours during an eight-hour workday, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, frequently balance, occasionally stoop, kneel, crouch, and crawl, never be exposed to excessive vibration, extreme cold, or extreme heat, and occasionally be exposed to atmospheric conditions and humidity, although never in excessive amounts, Finding 5, *id.* at 17; that, through her DLI, she was capable of performing past relevant work as a sales manager, sales agent, and laundry dry cleaner, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 20; that, in the alternative, considering her age (37 years old, defined as a younger individual, on her DLI, December 31, 2000, and subsequently changing age category to closely approaching advanced age), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id.* at 21-22; and that she, therefore, had not been disabled from June 2, 1994, her alleged disability onset date, through her DLI, December 31, 2000, Finding 7, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of

the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 (SSR 82-62), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff alleges disability commencing on June 2, 1994, representing that she did not seek SSD benefits until December 11, 2017, because she received private disability benefits for

PTSD from 1993 until her policy expired in 2017 and did not realize that she could simultaneously apply for SSD. *See* Statement of Errors at 1-2; *see also, e.g.*, Record at 645-46, 651-52, 688, 698 (letters or forms dated October 29, 2010, April 6, 2008, August 7, 2000, August 12, 1999, from LCSW Curtin to insurance company detailing course of psychotherapeutic treatment and recommending that plaintiff remain on disability).

The plaintiff's claim was reviewed initially by agency nonexamining psychologist David R. Houston, Ph.D., and on reconsideration by agency nonexamining psychologist Mary A. Burkhart, Ph.D. *See* Record at 65-66, 75-76. Dr. Houston noted consideration of only two documents, a November 14, 2004, summary letter of treatment and a March 12, 2018, mental impairment form, both authored by LCSW Curtin. *See id*. at 65. He found "insufficient evidence to evaluate the claim" for the period prior to the plaintiff's DLI, December 31, 2000. *Id*. at 66.

Dr. Burkhart noted review of only two additional documents, again authored by LCSW Curtin: a letter dated April 2, 1999, reporting that the plaintiff had been psychiatrically hospitalized for three weeks in June 1995 for PTSD and had significant symptoms but, "with continued treatment[,] . . . was expected recover with [a] good prognosis" and was described as "intelligent, having many talents and probably able to work eventually[,]" and a 2007 letter to the plaintiff's insurance company supporting her claim of ongoing disability. *Id*. at 76. Dr. Burkhart, as well, found "insufficient evidence . . . to assess [the] severity of [the plaintiff's] impairments and residual functioning" for the period from June 2, 1994, through December 31, 2000. *Id*.[2]

---

[2] While, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 11, Dr. Burkhart found that the plaintiff had medically determinable but nonsevere trauma- and stressor-related disorders, *see* Record at 75, she clarified that her finding of nonseverity was predicated on "insufficient evidence from" the alleged onset date to the date last insured "*to assess severity of impairments* and residual functioning[,]" *id*. at 76 (emphasis added).

The plaintiff represents, and the commissioner does not contest, that neither Dr. Houston nor Dr. Burkhart had the benefit of review of later-submitted insurance records that included a summary letter by psychologist Kathy Karpeles, Ed.D., dated April 9, 1999, a psychiatric evaluation by Charles Lewis Johnson, M.D., dated October 4, 1995, and LCSW Curtin's underlying treatment notes. *See* Statement of Errors at 4; Opposition at 1; Record at 704-06, 741-42; *see also, e.g., id*. at 978, 983, 992.

Dr. Karpeles described the plaintiff as having had "a significant history of trauma and abuse[,]" having been "sexually, physically, psychologically and emotionally abused by multiple family members throughout her early and adolescent childhood" and having had two abusive husbands, one of whom "had tortured her on at least three occasions." Record at 704. She noted that the plaintiff's "intrusive and recurrent distressing recollections of past horrific events and recurrent distressing dreams began to take their toll[,]" with work "becoming too stressful and exhausting to keep up with." *Id*. Ultimately, when the plaintiff "could no longer manage her highly rigid set of self expectations, she became very overwhelmed and disoriented[,]" and "her startle response, a symptom of her PTSD, which was obvious to [Dr. Karpeles] from the beginning, significantly increased." *Id*. at 705. "So much so," Dr. Karpeles noted, "that I have to say that in all my professional life, she has the most severe startle response that I have ever witnessed." *Id*. Dr. Karpeles recounted that she had urged the plaintiff to stop driving her car "as a necessary safety precaution[,]" at which time the plaintiff also "begrudgingly admitted that she did not have the stamina, tolerance or capability to do her job[,]" from which she resigned in June 1994. *Id*.

Dr. Karpeles noted that the plaintiff's condition subsequently worsened. *See id*. Her nightmares, insomnia, fears, confusion, and dissociation escalated, and "[s]uicidal ideation and minor behavioral gesturing began[,]" leading to her agreement to a voluntary psychiatric

5

hospitalization from June 6 through 23, 1995. *Id*. Dr. Karpeles "began to question the possibility of a diagnosis of Dissociative Identity Disorder" but had limited experience working with that disorder and, therefore, facilitated the plaintiff's transfer in September 1995 to a therapist more highly trained in treating that disorder, LCSW Curtin. *Id*. At the conclusion of her letter, Dr. Karpeles listed diagnoses of PTSD and Generalized Anxiety Disorder. *See id*. at 706.

Dr. Johnson summarized the plaintiff's history and reported symptoms, conducted a mental status examination in which he noted, *inter alia*, that her affect was anxious, and diagnosed her with PTSD. *See id*. at 741-42.

LCSW Curtin diagnosed the plaintiff with PTSD, Panic Disorder, and Dissociative Identity Disorder, *see id*. at 708, characterizing her in his April 2, 1999, letter as "among the most severely and thoroughly abused individuals I have worked with in 15 years of practice as a social worker[,]" *id*. at 707. In his treatment notes for the period prior to the plaintiff's DLI, he recorded symptoms that included flashbacks, *see id*. at 992, terrible memories from a cult, *see id*. at 983, and the constant repetition of messages, *see id*. at 978, and noted that she was "[v]ery dissociated – hard to talk[,]" *id*. at 992. In his August 7, 2000, report to the plaintiff's disability insurer, he described her as "on an uneven course w[ith] some setbacks[,]" with "severe limitations from psychological [and] emotional condition[,] including anxiety, panic attacks, depression, flashbacks, problems with eating, sleeping, concentrating[,]" *id*. at 688.

LCSW Curtin submitted a form dated April 29, 2019, in which he checked boxes indicating that, due to mental and/or physical impairments, the plaintiff was not capable in a normal work setting on a sustained 40-hour-a-week basis of understanding, remembering, and carrying out simple instructions, responding appropriately to supervision, coworkers, and usual work situations, or dealing with changes in a routine work setting. *See id*. at 1139. He further indicated that, in

such a setting, and as a result of her impairments, the plaintiff would be off-task at least 15 percent of the time and would miss work or leave early at least two times per month. *See id*.

The ALJ concluded that the plaintiff had no medically determinable mental impairment. *See id*. at 15. She deemed the plaintiff's "precise [mental] diagnoses . . . questionable[,]" stating that, although Dr. Johnson assessed PTSD in 1995, he "did not document any abnormal objective findings in making the diagnosis other than to note an anxious affect, and thus his assessment appear[ed] to be based on subjective reports." *Id*. She added that there also were "durational concerns with regard to the assessment of PTSD here[,]" which she did not explain. *Id*. She acknowledged that LCSW Curtin had assessed dissociative disorder but noted that he was not an acceptable medical provider for purposes of evidencing diagnoses. *See id*.

In the alternative, the ALJ found that, even if the plaintiff had a medically determinable mental impairment, her "mental condition did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore nonsevere during the period at issue." *Id*. She described that finding as supported by record evidence that included the following:

1. While Dr. Karpeles stated that the plaintiff could possibly be diagnosed with Dissociative Identity Disorder, she "completed no objective mental status examination and instead relied on the [plaintiff]'s own statements and reports of symptoms." *Id*. at 16 (citation omitted).

2. Dr. Johnson "found that aside from some anxiety, the [plaintiff] appeared mentally stable[,]" for example, "was appropriately dressed, organized, and had intact sensation, judgment, and insight, as well as average intelligence." *Id*. (citation omitted). Dr. Johnson's October 1995 progress note revealed that the plaintiff's PTSD symptoms had not worsened. *See id*.

The ALJ deemed Dr. Burkhart's opinion "persuasive in part" in that it was "consistent with evidence showing that the [plaintiff] was horseback riding and caring for up to six horses during

7

the adjudicative period." *Id*. at 19-20.  She found LCSW Curtin's opinion "unpersuasive," explaining that, (i) to the extent that he opined that the plaintiff could not work, that finding is statutorily reserved to the commissioner, (ii) he had "basically checked off boxes[,]" and (iii) there was no "objective evidence to support [LCSW] Curt[]in's findings of any mental diagnosis, let alone a severe one, during the adjudicative period[.]" *Id*. at 20.  She elaborated that, although LCSW Curtin provided handwritten notes, there was "little evidence of any objective mental status examinations to support that the [plaintiff] ha[d] more than mild mental limitations, as detailed above." *Id*.

The commissioner concedes that the ALJ overlooked Dr. Karpeles' diagnosis of PTSD but argues that there was no prejudicial error. *See* Opposition at 7.  He points out that a diagnosis alone cannot establish the existence of a medically determinable impairment, arguing that, despite Dr. Karpeles' descriptions of the plaintiff's severe startle response and dissociation, she performed "no supportive mental status examination or other testing[.]" *Id*.  Accordingly, he reasons, the ALJ correctly characterized the Karpeles opinion as reliant on the plaintiff's own statements and reports. *See id*.  He contends that, in any event, the ALJ alternatively supportably deemed any mental impairment nonsevere, and the plaintiff has not met her burden of demonstrating that any error was outcome-determinative. *See id*. at 11-13.

As the plaintiff acknowledges, *see* Statement of Errors at 7, in this district, "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim[,]" *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).  However, she asserts that she meets that test. *See* Statement of Errors at 7 (citing *Priest v. Colvin*,

8

No. 1:15-cv-00379-JHR, 2016 WL 7335583 (D. Me. Dec. 16, 2016); *Plourde v. Colvin*, No. 1:12-cv-194-JAW, 2013 WL 1345519 (D. Me. Mar. 14, 2013) (rec. dec., *aff'd* Apr. 2, 2013)). I agree.

The ALJ's Step 2 finding is unsupported by substantial evidence. To the extent that she relied in part on the Burkhart opinion, her reliance was misplaced. Dr. Burkhart made clear that she had insufficient evidence to render an opinion; indeed, she did not have the benefit of review of subsequently submitted material evidence of diagnoses, objective findings, and intensive treatment. To the extent that the ALJ relied on her own review of evidence unseen by Drs. Houston and Burkhart, she overlooked both Dr. Karpeles' diagnosis of PTSD, confirmed by Dr. Johnson, and objective findings seemingly supporting that diagnosis, including Dr. Karpeles' observations that the plaintiff had "the most severe startle response" that she had "ever witnessed" and "began dissociating fairly regularly" during their sessions. Record at 705. She then rejected the Curtin opinion in part on the erroneous basis that there was no "objective evidence to support [LCSW] Curt[]in's findings of any mental diagnosis, let alone a severe one, during the adjudicative period[.]" *Id*. at 20.

Nor were these errors harmless. "[T]his court has made an exception to [the *Bolduc*] rule in circumstances in which the evidence of record essentially supplies the missing information." *Plourde*, 2013 WL 1345519, at *6 (citation and internal punctuation omitted). In *Plourde*, that evidence, unseen by agency nonexamining consultants, reflected a suicide attempt and inpatient psychiatric hospitalization, following which providers continued to record Global Assessment of Functioning (GAF) scores indicative of serious symptoms. *See id.* at *4-5. In *Priest*, that evidence consisted of the opinions of agency nonexamining consultants and a treating professional that the claimant suffered from a severe mental impairment, rejected by the ALJ although there was "no professional opinion to the contrary in the record." *Priest*, 2016 WL 7335583, at *3.

Here, the evidence of record supplying the missing information meeting the *Bolduc* test consists of the disability insurance records unseen by Drs. Houston and Burkhart, in particular, the diagnoses and findings of Dr. Karpeles, Dr. Johnson, and LCSW Curtin, and LCSW Curtin's opinion that the plaintiff would be off task at least 15 percent of the time, miss work or leave early at least two times per month, and be unable to respond appropriately to supervision and co-workers, each of which a vocational expert (VE) present at the plaintiff's hearing testified would eliminate the jobs on which the ALJ relied. *See* Record at 58.

"The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted). Because, as detailed above, the ALJ ignored or misconstrued material evidence unseen by agency nonexamining consultants, her findings are not conclusive here.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of May, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge